**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____


GINA M. KILPATRICK, individually and on behalf of a class of all
other persons similarly situated, and on behalf of The Great-West
Life & Annuity Insurance Company Staff and Agents Savings Plan,

    Plaintiff,

v.

GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY;
TRUSTEE COMMITTEE OF GWL&A FINANCIAL INC.; and
JANE AND JOHN DOES 1-25,

    Defendants.

_____

**CLASS ACTION COMPLAINT**
_____

Plaintiff Gina M. Kilpatrick, individually and on behalf of a class of similarly situated current and former participants in The Great-West Life & Annuity Insurance Company Staff and Agents Savings Plan ("Plan"), and on behalf of the Plan, brings this action for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against Great-West Life & Annuity Insurance Company ("Great-West"), the Trustee Committee of GWL&A Financial Inc. ("Committee"), and the current and former members of the Committee during the Class Period ("Trustees" or "Jane and John Does 1-25") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. The Trustees are responsible for choosing the investments in the Plan and the service-providers to the Plan. The Trustees are officers and employees of Great-West or its subsidiaries and affiliates. The Trustees are not independent of Great-West.

2. Great-West is the recordkeeper for the Plan and provides various administrative services to the Plan. Over the course of the Class Period, July 31, 2009 to the present, Great-West has received millions of dollars, directly or indirectly, from the Plan, for such recordkeeping and administrative services.

3. The Trustees caused the Plan to invest tens of millions of dollars in various pooled separate accounts and collective trusts established and managed by Great-West subsidiaries and affiliates.[1] As a result, the Plan has paid Great-West millions of dollars in investment management fees during the Class Period.

---

[1] Pooled separate accounts and collective trusts are commingled investment funds that are not registered, not publicly traded, and generally available only to institutional investors.

4. The Trustees caused the Plan to make these payments to Great-West by choosing and maintaining Great-West as recordkeeper to the Plan and by choosing and maintaining investment funds in the Plan established and managed by Great-West and its affiliates.

5. These payments and arrangements between Great-West and the Plan were prohibited by ERISA and the Trustees breached their fiduciary duties under ERISA by causing the payments and arrangements.

6. The Trustees also caused the Plan to use TD Ameritrade, Inc. as the broker for a "brokerage window" in the Plan. A brokerage window allows participants to choose investment options that are not directly available in the Plan. TD Ameritrade received direct compensation from the Plan, from participants via trades made through the brokerage window, and revenue sharing from funds purchased through the brokerage window. Accordingly, TD Ameritrade is a party in interest to the Plan.

7. The fiduciaries for the Putnam Retirement Plan, a plan offered to employees of Putnam Investments, LLC ("Putnam"), an affiliate of Great-West, also use TD Ameritrade for brokerage services for that plan. TD Ameritrade received direct compensation from the Putnam Retirement Plan, from participants via trades made through the brokerage window, and revenue sharing from funds purchased through the brokerage window.

8. TD Ameritrade uses Great-West as a recordkeeper for its own employee benefit plan.

9. The arrangements between the Great-West, Putnam, and TD Ameritrade with respect to their plans and services give rise to a plausible inference that Great-West and TD Ameritrade agreed that their respective retirement plans would use their respective services. This kind of quid pro quo with retirement plan assets is a prohibited transaction under ERISA.

10. This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, 409, 502(a)(2), 29 U.S.C. §§ 1104, 1106, 1109, 1132(a)(2).

11. Plaintiff Gina M. Kilpatrick is a resident of San Bernardino, California, and participated in the Plan during the Class Period. Plaintiff brings this action on behalf of the Plan for losses to the Plan and for disgorgement of unlawful fees, expenses, and profits taken by Defendants for the benefit of Great-West.

## JURISDICTION

12. This action arises under Title I of ERISA and is brought by Plaintiff under ERISA §§ 502(a)(2), 29 U.S.C. §§ 1132(a)(2), to enjoin acts and practices that violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and prohibited transactions under ERISA § 406, 29 U.S.C. § 1106, and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

13. This court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of civil actions brought under Title I of ERISA, and 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

14. This court has personal jurisdiction over Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and the Plan is and was administered in this District and the breaches of ERISA took place herein. This Court also has personal jurisdiction over Defendants pursuant to Fed. R Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Colorado.

15. Venue of this action lies in the District of Colorado pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is and was administered in Greenwood Village, Colorado, within this District, the breaches of ERISA took place in this District, and/or a Defendant resides or may be found in this District.

## GENERAL ALLEGATIONS

### A. Fiduciaries and Parties in Interest

16. The Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

17. Great-West is an insurance and financial services company that, among other things, offers retirement plan and investment products and services. Its principal place of business is in Greenwood Village, Colorado.

18. Great-West was and is the Plan sponsor, a named fiduciary, the Plan Administrator, and the Trustee of the Plan. It is a fiduciary of the Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a party in interest to the Plan within the meaning of ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C). The Committee and the Trustees were and are fiduciaries of the Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and parties in interest to the Plan within the meaning of ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

### B. The Plan and Administration of the Plan

19. The Plan is a 401(k) defined contribution profit sharing plan, funded by employee deferred compensation contributions and Company matching and profit-sharing contributions.

20.  The Plan offers various investment options for investment, including many investment options established and managed by Great-West.

21.  Forms 5500 identify Great-West as the Sponsoring Employer, and designate the Sponsoring Employer as the named fiduciary and Plan Administrator.

22.  The Committee and the Trustees are responsible for selecting, reviewing, and removing Plan investments and service providers.

## CLASS ALLEGATIONS

23.  Plaintiff brings this action on behalf of a class defined as:

> All participants in The Great-West Life & Annuity Insurance Company Staff and Agents Savings Plan from July 31, 2009 to the present. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

24.  Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

25.  The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The Plan had more than 5,000 participants and beneficiaries in every year of the Class Period, all of whom suffered from the excessive and improper recordkeeping arrangements alleged herein. The number of class members is so large that joinder of all its members is impracticable.

26.  Common questions of law and fact include:

- Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plan and services for the Plan;

- Whether Defendants breached their fiduciary duties to the Plan by causing the Plan to invest its assets in Great-West investment funds;
- Whether the investment and service-provider decisions made by Defendants were solely in the interests of Plan participants and beneficiaries;
- Whether the Plan suffered losses as a result of Defendants' fiduciary breaches;
- Whether Defendants caused the Plan to engage in prohibited transactions.

27. Plaintiff's claims are typical of the claims of the Class. She has no interests that are antagonistic to the claims of the Class. She understands that this matter cannot be settled without the Court's approval.

28. Plaintiff will fairly and adequately protect the interests of the Class. She is committed to the vigorous representation of the Class. Plaintiff's counsel are experienced in class action and ERISA litigation.

29. A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable. The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, as fiduciaries of the Plan, were obligated to treat all Class members similarly as Plan participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiff is unaware of any difficulty in the management of this action as a class action.

30. This Class may be certified under Rule 23(b).

- 23(b)(1). As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.
- 23(b)(2). This action is suitable as a class action under 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.
- 23(b)(3). This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is not aware of difficulties likely to be encountered in the management of this matter as a class action.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Disloyal Conduct And Causing Prohibited Transactions Between The Plan And Plan Service Provider Great-West In Connection With Recordkeeping And Administrative Services**

31. Paragraphs 1 through 30 above are realleged and incorporated herein by reference.

32. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires plan fiduciaries to act "solely in the interest" of plan participants and beneficiaries. Subsection (A) of this section requires that the fiduciary act for the "exclusive purpose" of providing benefits to plan participants and defraying reasonable expenses of plan administration. 29 U.S.C. § 1104(a)(1)(A).

33. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits fiduciaries from causing plans to engage in transactions that they know or should know constitute direct or indirect transfers of the plans' assets to, or use of the plans' assets by or for the benefit of, parties in interest.

34. ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits fiduciaries from self-dealing or acting for the benefit of others in plan transactions.

    a. Subsection (1) provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b), (b)(1).

    b. Subsection (2) provides that a fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. §§ 1106(b), (b)(2).

    c. Subsection (3) provides that a fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. §§ 1106(b), (b)(3).

35. Great-West and the Plan entered into a contract under which Great-West and its subsidiaries provided services to the Plan in exchange for compensation.

36. Great-West provided trust and administrative services to the Plan through its divisions.

37. Great-West received its compensation for these trust and administrative services directly from the Plan and from mutual funds and other investment options held by Plan participants through revenue sharing.

38. Revenue sharing payments are paid by fund managers to plan administrators and recordkeepers, here Great-West.

39. Great-West set the amount of its compensation for administering the Plan in the same manner – calculated to earn a profit – as it set its rates for all of its trust and recordkeeping clients.

40. Plaintiff estimates that Great-West collected approximately $4 million in fees for recordkeeping, administration, and trust services to the Plan during the Class Period.

41. Because of Great-West's fiduciary and party in interest relationship to the Plan, it was only permitted by law to collect direct expenses, that is, no profit, in connection with providing recordkeeping, administration, and trust services to the Plan.

42. Such direct expenses, Plaintiff estimates, were about $1,000,000 during the Class Period. Thus, Defendants caused the Plan to pay $3,000,000 in excess administrative, recordkeeping, and trustee fees to Great-West during the Class Period.

43. By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the Plan:

a. Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

b. By causing the Plan to engage in transactions that they know or should know constitute direct or indirect transfers of the Plan's assets to, or use of the Plan's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

c. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan dealt with the assets of the Plan in its own interest or for its own account in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

d. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan, in its individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2); and

e. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan received consideration for its own personal account from any party dealing with the Plan in connection with a transaction involving the assets of the Plan, in violation of ERISA section 406(b)(3), 29 U.S.C. § 1106(b)(3).

44. As a direct and proximate result of these breaches of fiduciary duties, the Plan and its participants have suffered losses of approximately $3,000,000 plus lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to ERISA section 409, 29 U.S.C. § 1109, and ERISA section 502(a)(2), 29 U.S.C § 1132(a)(2).

## SECOND CLAIM FOR RELIEF

**Disloyal Conduct And Causing Prohibited Transactions Between The Plan And Great-West In Connection With Investment Funds Managed By Great-West**

45. Paragraphs 1 through 44 above are realleged and incorporated herein by reference.

46. The Trustees are responsible for selecting, monitoring, and removing Plan investments.

47. The Trustees caused the Plan to invest millions of dollars in Great-West investment funds, including pooled separate accounts, collective trusts, a stable value fund, and a guaranteed certificate fund.

48. Great-West collected fees from these investment arrangements.

49. By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the Plan:

   a. Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

   b. By causing the Plan to engage in transactions that they know or should know constitute direct or indirect transfers of the Plan's assets to, or use of the Plan's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

   c. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan dealt with the assets of the Plan in its own interest or for its own account in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

d. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan, in its individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2); and

e. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan received consideration for its own personal account from any party dealing with the Plan in connection with a transaction involving the assets of the Plan, in violation of ERISA section 406(b)(3), 29 U.S.C. § 1106(b)(3).

50. As a direct and proximate result of these breaches of fiduciary duties, the Plan and its participants have paid Great-West substantial investment management and other fund-related fees during the Class Period, plus lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to ERISA section 409, 29 U.S.C. § 1109, and ERISA section 502(a)(2), 29 U.S.C § 1132(a)(2).

### THIRD CLAIM FOR RELIEF

**Disloyal Conduct And Causing Prohibited Transactions Between The Plan And TD Ameritrade In Connection Brokerage Services Provided By TD Ameritrade To The Plan**

51. Paragraphs 1 through 50 above are realleged and incorporated herein by reference.

52. The Trustees are responsible for selecting, monitoring, and removing Plan service providers.

53. The Trustees caused the Plan to select TD Ameritrade to provide brokerage services to the Plan. TD Ameritrade collected brokerage fees and other compensation from the Plan, direct and indirect, in connection with the Plan's use of brokerage services.

54.     TD Ameritrade used Great-West as the recordkeeper for its retirement plan. Great-West collected fees, direct and indirect, from the TD Ameritrade retirement plan.

55.     By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the Plan:

    a. Solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

    b. By causing the Plan to engage in transactions that they know or should know constitute direct or indirect transfers of the Plan's assets to, or use of the Plan's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

    c. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan dealt with the assets of the Plan in its own interest or for its own account in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

    d. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan, in its individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2); and

    e. By causing the Plan to engage in the above conduct and omissions, in which a fiduciary to the Plan received consideration for its own personal account from any party dealing with the Plan in connection with a transaction involving the assets of the Plan, in violation of ERISA section 406(b)(3), 29 U.S.C. § 1106(b)(3).

56. As a direct and proximate result of these breaches of fiduciary duties, the Plan and its participants have paid TD Ameritrade, directly and indirectly, substantial brokerage fees during the Class Period. Great-West benefited from these arrangements by earning recordkeeping fees from TD Ameritrade's own retirement plan. Defendants are jointly and severally liable pursuant to ERISA section 409, 29 U.S.C. § 1109, and ERISA section 502(a)(2), 29 U.S.C § 1132(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

A. Ordering Defendants to restore to the Plan any losses, including lost-opportunity costs, resulting from fiduciary breaches and prohibited transactions committed by them or for which they are liable;

B. Permanently enjoining Defendants from violating the provisions of Title I of ERISA;

C. Enjoining Defendants to track the direct expenses incurred by any fiduciary or party in interest to the Plan, in the provision of services to the Plan, and certify annually by affidavit that reimbursement from the Plan to any fiduciary or party in interest service provider amounts to no more than direct expenses;

D. Appointing an independent fiduciary to approve and monitor the selection and compensation of service providers to the Plan;

E. Requiring the Defendants to pay for all costs associated with the appointment and retention of the independent fiduciary;

F. Requiring the Defendants to cooperate with the independent fiduciary;

G. Awarding the Plaintiff the costs of this action;

H. Awarding post-judgment interest; and

I. Ordering such further relief as is appropriate and just.

Dated: September 4, 2015		Respectfully submitted,

		s/ Ryan T. Jenny					
		Gregory Y. Porter, *pro hac vice* to be filed
		Ryan T. Jenny
		Bailey & Glasser LLP
		1054 31st Street, NW
		Suite 230
		Washington, DC 20007
		Telephone: (202) 463-2101
		Facsimile: (202) 463-2103
		gporter@baileyglasser.com
		rjenny@baileyglasser.com
		*Attorneys for Plaintiff Gina M. Kilpatrick*

## **CERTIFICATION OF GOOD STANDING**

Pursuant to D.C.COLO.LAttyR 5(a)(2), I hereby certify that I am a member in good standing of the bar of this court, and I appear in this case as counsel for Plaintiff Gina M. Kilpatrick.

Dated: September 4, 2015

                                       s/ Ryan T. Jenny
                                       Ryan T. Jenny
                                       Bailey & Glasser LLP
                                       1054 31st Street, NW
                                       Suite 230
                                       Washington, DC 20007
                                       Telephone: (202) 463-2101
                                       Facsimile: (202) 463-2103
                                       rjenny@baileyglasser.com
                                       *Attorneys for Plaintiff Gina M. Kilpatrick*