IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01927-KLM

GINA M. KILPATRICK, individually and on behalf of a class of all other persons similarly situated, and on behalf of The Great-West Life & Annuity Insurance Company Staff and Agents Savings Plan,

    Plaintiff,

v.

GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, and
TRUSTEE COMMITTEE OF GWL&A FINANCIAL INC., and
JANE AND JOHN DOES 1-15,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)** [#16][1] ("Motion"). Defendants filed a Memorandum in Support [#17] ("Opening Brief") of the Motion. Plaintiff filed a Response [#19], and Defendants filed a Reply [#25]. The Court has reviewed and considered the pleadings, the parties' arguments, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the following reasons, the Motion [#16] is **GRANTED**.

---

[1] "[#16]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

## I.  BACKGROUND

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1001, *et seq.*  Plaintiff alleges that she has been a participant in The Great-West Life & Annuity Insurance Company Staff and Agents Savings Plan (the "Plan") from 2009 through to the present.  *Compl.* [#1] ¶ 11.  The Defendants in this putative class action are Great-West Life & Annuity Insurance Company ("Great-West"), the named employer and fiduciary on the Plan, as well as the current and former members of the Trustee Committee of GWL&A Financial Inc. ("Trustees"), who were responsible for managing the Plan investments and service providers.  *Id.* ¶ 18, 22.  Great-West, which is a company in the business of providing retirement plan services, also provided such administrative services for its own Plan.  *Id.* ¶ 36.  In addition, Great-West is also in the business of providing investment products.  *Id.* ¶ 17.  The Trustees, who work for Great-West, chose Great-West's investment products for the Plan.  *Id.* ¶ 47.

In plain English, the financial company Great-West, as an employer in its own right, offered a retirement plan – the Plan – to its employees.  The individuals in charge of managing that Plan were, naturally, Great-West employees themselves, and they chose Great-West to provide administrative services to the Plan (rather than choosing a competing financial company), and invested some of the funds from the Plan in Great-West investment products.  Because Great-West received compensation and collected fees in rendering these services to the Plan, which were paid with funds from the Plan, Plaintiff filed this action alleging that Defendants engaged in prohibited transactions under ERISA and breached their fiduciary duties to the Plan participants.  *Id.* ¶¶ 37, 48.

Specifically, Plaintiff's First Claim alleges that Great-West's administration of Plan services was a prohibited transaction under 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b), and consequently a breach of fiduciary duty. *Id.* ¶¶ 31-44. Similarly, Plaintiff's Second Claim alleges that the selection of Great-West investment products was a prohibited transaction under 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b), and thus a breach of fiduciary duty under § 1104(a)(1)(A).[2] *Id.* ¶¶ 45-50.

Defendants have requested entry of judgment on the pleadings. *Motion* [#16]. Defendants argue that Plaintiff's claims fail as a matter of law for two reasons: (A) Plaintiff is not a "participant" as defined by ERISA, and hence lacks standing to bring her claims; and (B) Plaintiff has failed to state a claim that Defendants breached their fiduciary duty and engaged in prohibited transactions. Because the Court concludes that Plaintiff lacks statutory standing, the Court does not reach Defendants' second argument.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion filed pursuant to Fed. R. Civ. P. 12(c) is evaluated using the same standard that applies to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).[3] *Farris v. Garden City, Kan.*, 634 F. App'x

---

[2] Plaintiff also asserts a Third Claim related to Defendants' selection of TD Ameritrade, Inc. for brokerage services. *See id.* ¶¶ 51-56. However, the parties state that they have agreed to dismissal of the Third Claim without prejudice. *See Response* [#19] at 2 n.1; *Reply* [#25] at 3 n.1. Accordingly, the Court does not address that claim.

[3] Although Defendants argue that Plaintiff lacks standing to bring her claim, a lack of statutory standing under ERISA is analyzed pursuant to Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1). *See Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013) (applying Fed. R. Civ. P. 12(b)(6) standard on appeal from court's dismissal of complaint for lack of standing under ERISA).

__, __, No. 15-3160, 2016 WL 496046 (Mem), at *1 (10th Cir. Feb. 9, 2016) (citing *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013)). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] that the pleader is entitled to relief," as required by Rule 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  DISCUSSION

"Pursuant to 29 U.S.C. § 1132, a 'participant' has standing to bring a civil action to enforce [her] rights under the terms of an ERISA plan or to enforce ERISA's provisions." *Alexander v. Anheuser-Busch Cos., Inc.*, 990 F.2d 536, 538 (10th Cir. 1993).  The Tenth Circuit Court of Appeals has elaborated that a "participant" is defined as one of the following:

> (1) an employee currently in covered employment;
> (2) an employee reasonably expected to be in covered employment;
> (3) a former employee with a reasonable expectation of returning to covered employment; or
> (4) a former employee with a colorable claim to vested benefits, which is to say a colorable claim that (a) he or she will prevail in a suit for benefits, or (b) his or her eligibility requirements will be fulfilled in the future[.]

*Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1223 (10th Cir. 2011).  Further, "ERISA standing is assessed as of the filing of a complaint." *Id.* at 1223.

Among the above four categories of participants, Plaintiff argues that she has standing under the fourth category of participants, i.e., that she is a "former employee with a colorable claim to vested benefits."  *See Response* [#19] at 15.  Thus, the Court

analyzes: (1) whether Plaintiff is a former employee; and (2) whether she has sufficiently alleged a "colorable claim to vested benefits."

**A.     Former Employee**

As an initial matter, the Court notes that Defendants do not dispute that Plaintiff is a former employee. *See id.* at 11. Indeed, Plaintiff alleges that she "participated" in the Plan "during the Class Period," *compl.* [#1] ¶¶ 11, 19, and Defendants concede that "it can be inferred" from this allegation that Plaintiff is a former employee, *Opening Brief* [#17] at 11. Thus, Plaintiff has sufficiently alleged that she is a former employee.

**B.     Colorable Claim to Vested Benefits**

The parties' dispute primarily centers on whether Plaintiff has sufficiently alleged that she has a "colorable claim to vested benefits." Defendants argue that applicable precedent does not allow a former employee who has already received her benefits under a retirement plan, such as Plaintiff, to later bring suit based on purported prohibited transactions or an alleged breach of duty. *Opening Brief* [#17] at 11-12. Moreover, Defendants contend that Plaintiff has not stated a "colorable claim" because she has not actually alleged that the Plan could have obtained services at a better cost than what was charged by Defendants, nor has she alleged that the Plan imprudently selected its own investment products. *Id.* at 12.

Defendants rely on a series of cases in the Tenth Circuit stating that former "cashed-out" employees may not subsequently bring suits under ERISA based on allegations that they did not receive additional benefits due to a defendant's misconduct. In *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146 (10th Cir. 2004), the court summarized the Tenth Circuit

precedent as follows:

> [F]ormer employees who [have] received the full extent of their vested benefits [do] not have the right to sue under ERISA for additional benefits that they might have received but for the wrongful conduct of their employers. This is because where a former employee has received all benefits entitled to him under his plan . . . , he has no colorable claim that additional benefits have 'vested' or 'will vest.' . . . [He] therefore seek[s] a damage award, not vested benefits improperly withheld.

*Id.* at 1160 (internal quotations and citations omitted). In *Felix* and other Tenth Circuit cases, the court distinguishes between plaintiffs seeking damages for additional benefits they could have obtained and plaintiffs seeking damages for benefits improperly withheld. For example, in *Felix*, the plaintiffs alleged that the defendant urged the plaintiffs to take early retirement by telling them that delaying retirement not only would not gain the employees additional benefits, but instead would jeopardize their existing benefits. *Id.* at 1152. Subsequently, soon after the employees retired, the employer offered the same retirement benefits plus an additional, one-time $15,000 bonus to existing employees. *Id.* The Tenth Circuit held that the plaintiffs had not asserted a 'colorable claim to vested benefits, because they did not "claim that they are entitled to benefits under the terms of their plan as it existed at the time of their retirement;" rather, the Tenth Circuit noted that the plaintiffs were seeking "damages for the loss of the additional benefits under the later package . . . because they *would have been* participants under that package but for Defendant's misrepresentations." *Id.* at 1162 (emphasis in original). Other Tenth Circuit opinions finding that plaintiffs lacked standing have rested on similar facts and reasoning, and concluded that the "crucial point" is whether a claimant has received the "'full extent' of [her] vested benefits" and is therefore seeking a "damage award based upon . . .

allegedly fraudulent" conduct. *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528 (10th Cir. 1993). The court has made clear that claims for damage awards by claimants who received the full extent of their vested benefits are not valid under ERISA. *See Alexander v. Anheuser Busch Companies, Inc.*, 990 F.2d 536, 539 (10th Cir. 1993) ("Because [Plaintiff] seeks a 'damage award, not vested benefits improperly withheld,' he does not come within the definition of 'participant' and, consequently, lacks standing to pursue this action.") (quoting *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990)).

Plaintiff argues that she has standing because other courts have recently held that a cashed-out former employee may bring a claim for breach of fiduciary duty. She cites to numerous circuit court decisions distinguishing between a cashed-out claimant seeking additional benefits and a cashed-out claimant seeking to recover based on allegations that fraudulent conduct diminished her benefits. *See, e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 734 (9th Cir. 2009) ("When employees withdraw their funds from a benefit plan, but claim that they would have had more to withdraw absent breach of fiduciary duty by those managing the plan, it is not difficult to see a common sense loss of benefits in their plan caused by the alleged fiduciary breach."); *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) ("[W]e conclude that participants in defined contribution plans controlled by ERISA have colorable claims against the fiduciaries of their plans when they allege that their individual accounts in the plans were diminished by fraud or fiduciary breaches[.]"); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 297 (3d Cir. 2007) ("[I]t is not difficult to conclude that Graden has standing as a plan participant. As an account-holder in the Conexant plan, he was entitled to the net value of his account as it should have been in

the absence of any fiduciary mismanagement."). *See also Evans v. Akers*, 534 F.3d 65, 67 (1st Cir. 2008); *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1219-20 (11th Cir. 2008).

Although the Tenth Circuit has yet to rule on this particular issue, no reported cases foreclose a plaintiff from bringing a claim for breach of fiduciary duty based on allegations that she did not receive all of the benefits to which she was entitled under the plan. Indeed, the Court notes that the Tenth Circuit has implied that such a claim is permissible. *See Raymond*, 983 F.2d at 1536 (holding that the "crucial point" in determining standing is whether the plaintiffs had received the "**full extent**" of their vested benefits). Thus, in short, the Court concludes that existing precedent permits an ERISA claimant to bring a breach of fiduciary duty claim where she alleges that the fiduciary's actions reduced the value of the plan.

However, although Plaintiff brings an action alleging breach of fiduciary duty, the issue of whether she is bringing a claim seeking to recover *losses* to the Plan and, by logical extension, to the benefits she received remains a separate one. 29 U.S.C. § 1109 specifies and distinguishes two forms of liability: first, a fiduciary "may be personally liable to make good to such plan **any losses to the plan** resulting from each such breach," and, second, a fiduciary may be liable "to restore to such plan **any profits of such fiduciary** which have been made through use of assets of the plan[.]" 29 U.S.C. § 1109(a) (emphasis added). However, as discussed above, *Felix* held that claimants who merely seek damages awards are not plan participants and lack standing to bring an ERISA claim.

Construing the Complaint in a light most favorable to Plaintiff, as the Court must, the following allegations relate to the relief sought here:

- "Great-West provided trust and administrative services to the Plan" and "received compensation for these trust and administrative services directly from the Plan[.]" *Compl.* [#1] ¶¶ 36, 37.

- "Great-West set the amount of its compensation for administering the Plan in the same manner – calculated to earn a profit – as it set its rates for all of its trust and recordkeeping clients." *Id.* ¶ 39.

- Plaintiff seeks to recover the profit Great-West earned from "administrative, recordkeeping, and trustee fees" which she calculates as "$3,000,000." *Id.* ¶¶ 42, 44.

- Similarly, "[t]he Trustees caused the Plan to invest millions of dollars in Great-West investment funds" and "Great-West collected fees from these investment arrangements." *Id.* ¶¶ 47, 48.

- As a result, Plaintiff seeks to recover what "the Plan . . . paid Great-West" for "investment management and other fund related fees[.]" *Id.* ¶ 50.

None of these allegations could plausibly support the conclusion that Plaintiff seeks "losses to the plan." To the contrary, it is clear that Plaintiff seeks the disgorgement of profits as a damage award rather than recovery of losses to the Plan. For example, with respect to her First Claim, Plaintiff does not allege that Defendant Great-West charged excessive fees for its administrative services or engaged in any malfeasance during the administration of the Plan; to the contrary, Plaintiff states that "Great-West set the amount of its compensation for administering the Plan in the same manner – calculated to earn a profit – as it set its rates for all of its trust and recordkeeping clients." *Compl.* [#1] ¶ 39. Similarly, although Plaintiff alleges that Defendant Great-West "collected fees" from the investment funds selected by the Trustees, Plaintiff makes no other allegations that indicate that the fees were excessive, that the investment funds were chosen despite the existence of superior alternatives, or, even, that the Trustees exclusively chose Great-West investment funds and refused to consider more lucrative alternatives. *Compl* [#1] ¶¶ 45-

48.

Indeed, all of the cases Plaintiff cites from other Circuit Courts of Appeal involve allegations that a fiduciary's conduct diminished the value of the Plan. *See, e.g.*, *Graden*, 496 F.3d at 294 (holding cashed out former employee sufficiently alleged that fiduciary's breach of fiduciary duty caused losses to the plan based on allegations that fiduciary offered stock fund as investment option despite knowing that it was "not . . . a prudent investment."); *Harris*, 573 F.3d at 732 (holding plaintiff sufficiently alleged losses to the plan based on allegations that employer purchased and held its own stock for plan investments despite knowing "that the stock price was artificially inflated"); *In re Mut. Funds Inv. Litig.*, 529 F.3d at 210 (holding plaintiffs alleged breach of fiduciary duty based on "fiduciaries' knowing investment in mutual funds that allowed investors to practice market timing, an abusive form of . . . activity that . . . harmed . . . the plaintiffs."). These cases are distinguishable because Plaintiff simply makes no allegations that Defendants' actions reduced the value of plan, and hence she has not alleged that she seeks "vested benefits improperly withheld." *Alexander*, 990 F.2d at 539.

The Court therefore concludes that Plaintiff lacks standing because she "[does] not claim that [she is] entitled to benefits under the terms of [the] plan as it existed at the time of [her] retirement." *Felix*, 387 F.3d at 1162. Rather, she claims that she should receive statutory *damages* in the form of disgorgement of Great-West's profits under 29 U.S.C. § 1109(a). Under *Alexander* and *Felix*, Plaintiff has failed to sufficiently allege standing to bring an ERISA claim against Defendants. Accordingly, the Court **grants** Defendants' Motion [#16] and Plaintiff's Complaint is **dismissed without prejudice**. *Reynoldson v.*

*Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to a dismissal when the plaintiff's allegations, "upon further investigation and development, could raise substantial issues").[4]

### IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#16] is **GRANTED** and Plaintiff's Complaint [#1] is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to close this case.

Dated: September 16, 2016

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[4] Because the Court grants Defendants' Motion to Dismiss based on lack of standing, the Court does not reach Defendants' alternative arguments regarding dismissal for failure to state a claim.